IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

IN RE: DAVID AND KAYLA DWELLE, Debtors           No. 6:12-bk-71728
                                                                                Ch. 13

DAVID DWELLE                                                              PLAINTIFF

v.                                             AP No. 6:13-ap-7081

ARVEST BANK et al.                                                     DEFENDANTS

ORDER DENYING MOTION FOR ATTORNEY FEES AND COSTS

The Court held a trial on the merits in this adversary proceeding on March 25, 26, and 27, 2015.  Separate debtor David Dwelle [Dwelle] prevailed in the portion of his complaint that alleged a violation of 11 U.S.C. § 525(b)(3) by Arvest Bank; the Court denied the remainder of Dwelle's complaint, which alleged violations under § 362(a)(1), (a)(2), (a)(3), (a)(6) and § 525(b)(1) and (b)(2).  In its order, which was filed on April 13, 2015, the Court allowed counsel for Dwelle fourteen days from the entry of the order to file a motion for attorney fees and costs pursuant to Federal Rule of Bankruptcy Procedure 7054 and instructed counsel to pay particular attention to Rule 54(d)(2)(B)(ii) relating to attorney fees.[1]  That subsection states that a motion for attorney fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award."  Now before the Court are Dwelle's *Rule 7054 Motion For Attorney Fees and Costs* filed on

---

[1] The Court notes that Dwelle's counsel relies, in part, on Federal Rule of Bankruptcy Procedure 7008(b) in his request for attorney fees.  However, this particular subsection was deleted by amendment in 2014.  In its stead, Federal Rule of Bankruptcy Procedure 7054 now expressly incorporates Rule 54(d)(2)(A)-(C) and (E), which deals specifically with attorney fees.  The new amendment took effect on December 1, 2014, and, according to the enabling clause in the Supreme Court's order, governs all proceedings in bankruptcy cases "thereafter commenced and, insofar as just and practicable, all proceedings then pending."  Regardless, Dwelle's reference to Rule 7008 instead of Rule 7054(d) is inconsequential to counsel's argument.

1

April 27, 2015, and the defendants' [collectively, Arvest] response and objection filed on May 11, 2015. For the reasons stated below, the Court denies Dwelle's motion.

**COSTS**

Costs, other than attorney fees, may be allowed to the prevailing party under Rule 7054(b)(1). The recoverable costs are enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Section 1920 also states that "[a] bill of costs shall be filed in the case . . . ." According to the Eighth Circuit, a bill of costs is mandatory. *United States v. Hiland*, 909 F.2d 1114, 1142 (8th Cir. 1990). Further, § 1924 requires that the bill of costs be verified by affidavit stating that the item "is correct and has been necessarily incurred in the case and that the services for which the fees have been charged were actually and necessarily performed." 28 U.S.C. § 1924; *Highland*, 909 F.2d at 1142. In this case, counsel for Dwelle did not file a verified affidavit of his asserted cost items.

The court has broad discretion in awarding costs. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 324 (8th Cir. 1993). In some instances, courts expand the enumerated list to allow costs for related fees or alternative services that are permitted under discovery rules. *See, e.g., Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 897 (8th Cir. 2009) (citing cases and allowing *pro hac vice* fees and video-deposition costs). In this case, apparently without regard to 28 U.S.C. §§ 1920 and 1924, Dwelle has requested costs in the total amount of $50,079.91, as follows:

| | | |
|---|---|---|
| 1. | Receipt and Purchase Costs Schedule<br>"Costs proven by purchase receipts maintained" | $1950.43 |
| 2. | Paper and Ink Cost Schedule<br>"Basic Paper and Ink Rate is $0.14 per piece expended" | $11,990.58 |
| 3. | Research Cost Schedule<br>"Costs proven by research expenditure records maintained" | $1838.90 |
| 4. | Communication Cost Schedule<br>"Costs proven by communication records maintained" | $34,300.00 |

The Court denies as a matter of law Dwelle's request for costs relating to his Research Cost Schedule in the amount of $1838.90 and his Communication Cost Schedule in the amount of $34,300.00. Neither of those alleged costs are allowable under 28 U.S.C. § 1920, nor are they related to any otherwise incurred court fees or alternatives to discovery that may be permitted as an allowable cost under § 1920. Computer-based legal research, "'like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award.'" *Standley*, 5 F.3d at 325 (quoting *Leftwich v. Harris–Stowe State College*, 702 F.2d 686, 695 (8th Cir. 1983)). Further, "creating, writing, sending, [and] receiving" e-mail communication is simply part of what an attorney does and is not taxable as a cost under § 1920. *Cf. Finan v. Good Earth Tools, Inc.*, No. 4:06 CV 878CAS, 2008 WL 1805639, at *14 (E.D. Mo. Apr. 21, 2008) *aff'd*, 565 F.3d 1076 (8th Cir. 2009) (court deducted billed attorney time for excessive time reviewing e-mails).[2]

---

[2] Counsel's Communication Cost Schedule is a compilation of counsel's charges for e-mail communications between him and his client, opposing counsel, the Court, and others. Each e-mail communication is billed for 15 minutes at $400.00 per hour for "creating, writing, sending, receiving" the communication and appear to be nothing more than attorney fees being billed as costs. If counsel also billed his client at counsel's alleged regular rate of $400.00 per hour for the same time during which he was attending to the e-mails, counsel would be, in effect, double-billing for his professional services. The Court notes that there is not a carve-out for e-mails on any of counsel's time entries, some of which allege 20 hours *and more* of uninterrupted "[r]esearching, writing, analyzing & applying all facts, laws, definitions, restatements, policies, and relationships pertaining to the parties and the harmful events complained of."

The Court also denies Dwelle's Receipt and Purchase Costs Schedule in the amount of $1950.43 for "[c]osts proven by purchase receipts maintained" and his Paper and Ink Cost Schedule in the amount of $11,990.58 for "basic paper and ink" at the rate of $0.14 per page. The Court allowed Dwelle fourteen days to file his motion for costs and limited a brief in support to 10 pages, *excluding a specific itemization of fees and costs.*" In other words, there was no page limit for the itemization of fees and costs. The itemization that Dwelle provided was lamentably insufficient and incomplete. Dwelle's itemization for his Receipt and Purchase Costs Schedule in the amount of $1950.43 consists of a single entry that states:

| 10/10/13 to 3/25/15 25 Records/Purchase Receipts maintained/ Documents maintained | Items, goods and services purchased on behalf of David Dwelle's causes and Dwelle's causes and claims of actions at case no. 6:13-ap-07081. |

Likewise, Dwelle's itemization for his Paper and Ink Cost Schedule in the amount of $11,990.58 consists of a single entry that states:

| 10/4/13 to 3/23/15 85,647 Paper & Ink pages | ((85,647 pages x 0.14 per piece = $11,990.58))[3] |

Without more, the Court cannot determine whether Dwelle's costs for these items were either reasonable or necessary. And, as stated earlier, Dwelle did not include a verified affidavit stating that the costs were necessarily incurred and the services for the fees were actually and necessarily performed. According to the Eighth Circuit, "'[a] prevailing party is presumptively entitled to recover all of its costs.'" *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 897 (8th Cir. 2009) (quoting *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006)). However, without the ability to perform

---

[3] There was no explanation of any kind as to how counsel determined there were actually 85,647 pages created during this case. Regardless, only copies made for use at trial are allowed to be taxed as costs; copies "that are merely incidental to the trial or are incurred in preparation for it will not be considered as necessary . . . ." *Evans v. Fuller*, 94 F.R.D. 311, 315 (W.D. Ark. 1982). Although counsel introduced a number of documents at trial, the Court finds it incredulous that over 85,000 pages were used or copied specifically for that purpose. Consequently, the Court cannot find that the 85,647 pages in this case were either reasonable or necessary.

even a cursory review of the alleged costs to determine whether they were either reasonable or necessary, and in the absence of a verified affidavit, the Court cannot grant Dwelle's request for costs relating to his Receipt and Purchase Costs Schedule in the amount of $1950.43 or his Paper and Ink Cost Schedule in the amount of $11,990.58.[4]

**ATTORNEY FEES**

As the Court stated in its April 13 order, § 525–the section under which Dwelle prevailed–does not include a private right of action. In other words, there is no statutory authority under § 525 for the Court to award either attorney fees or costs. *See Myers v. TooJay's Mgmt. Corp.*, 419 B.R. 51, 61 (M.D. Fla 2009) (citing cases and finding that majority of courts to address attorney fees under § 525 hold that fees are not authorized); *In re Simms-Wilson*, 434 B.R. 452, 470 (Bankr. S.D. Tex. 2010) (same). Further, § 105 is not available to create a private remedy when one is not provided for by the code. *Bessette v. Avco Fin. Servs., Inc.*, 240 B.R. 147, 156 (Bankr. D.R.I. 1999).[5]

The Court invited Dwelle's counsel to file a motion under Federal Rule of Bankruptcy Procedure 7054 if they chose to request attorney fees and costs. The Court also advised

---

[4] Curiously, counsel did not request reimbursement for service of subpoenas on witnesses (unless they were included in his Receipt and Purchase Costs Schedule).

[5] The Court found that compensatory damages for back wages were warranted under § 105 for the unlawful termination of Dwelle in contravention of § 525. In support of this finding, the Court reviewed cases in which equitable remedies were awarded under § 105 for violations of § 525. Although these cases allowed back pay, reinstatement, or injunctive relief, none of the cases awarded attorney fees to the prevailing party. *See, e.g., In re Sweeney*, 113 B.R. 359 (Bankr. N.D. Ohio 1990) (court awarded back pay); *In re Hopkins*, 81 B.R. 491 (Bankr. W.D. Ark. 1987) (court awarded back pay); *In re McNeely*, 82 B.R. 628 (Bankr. S.D. Ga. 1987) (court awarded lost profits); *In re Island Club Marina, Ltd.*, 38 B.R. 847 (Bankr. N.D. Ill. 1984) (court ordered county to issue building permit); *In re William Tell II, Inc.*, 38 B.R. 327 (N.D. Ill. 1983) (court ordered renewal of liquor license); *In re Johnson*, 28 B.R. 406 (Bankr. W.D. Pa. 1982) (court ordered university to give debtor access to transcript); *but see In re Patterson*, 125 B.R. 40 (Bankr. N.D. Ala. 1990) (court awarded attorney fees for either violation of automatic stay or violation of § 525(b) but with no authority cited).

Dwelle's counsel to pay particular attention to Rule 54(d)(2)(B)(ii), which requires specificity of the judgment and the statute, rule, or other grounds entitling Dwelle to an award of attorney fees. On April 27, Dwelle filed his motion. To the best of the Court's ability to interpret the argument used by Dwelle's counsel, the Court believes Dwelle is using the following two statutes as the bases for his request for attorney fees: Arkansas Code Annotated § 16-22-308 and 11 U.S.C. § 105.

The Arkansas statute on which Dwelle relies states that

> [i]n any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

Ark. Code Ann. § 16-22-308. However, Dwelle's reliance is misplaced. Dwelle argues that without a breach of contract, there could be no § 525(b)(3) action. Based on the alleged breach of contract, the Court could then allow attorney fees to Dwelle as the prevailing party in the § 525 action. Disregarding the fact that it was Dwelle who allegedly breached the cardholder agreement/contract to which Dwelle's counsel refers, that breach is only peripherally related to a violation of § 525(b) under the bankruptcy code. Arvest's violation of § 525 resulted from it terminating Dwelle's employment, not because Dwelle breached his cardholder agreement. Dwelle's action against Arvest was not for the purpose of recovering on an open account, statement of account, promissory note, bill, or contract for the purchase or sale of goods or merchandise. Nor was the action one to recover for labor or services. Nor was the action based on a breach of contract. Dwelle's action was brought under § 525(b)(3) of the bankruptcy code and was based on Arvest terminating Dwelle's employment solely because of Dwelle's non-payment of his obligation to Arvest, which resulted in Arvest charging off the debt. Accordingly, the Court holds that there is no basis for an award of attorney fees under Arkansas Code Annotated § 16-22-308 for Arvest's violation of § 525(b)(3).

6

Dwelle's reliance on § 105 is also misplaced. As stated above, § 105 is not available to create a private remedy when one is not provided for by the code. As Judge Fussell explained,

> [t]here is no authority in § 525 for an award of attorney's fees to the prevailing party. Congress has created a statutory basis for courts to award attorney's fees to private litigants who prevail under various civil rights laws. *See, e.g.*, 42 U.S.C. § 1988 (Civil Rights Attorney's Fees Awards Act of 1976). There are also provisions in the Bankruptcy Code itself for awards of attorney's fees to prevailing parties. *See, e.g.*, 11 U.S.C. § 523(d). If Congress had desired to sanction or encourage fee awards in cases under § 525, it could easily have granted the courts discretion to make such awards. It did not do so.
>
> In the absence of specific statutory authority, a court ordinarily has no power to award attorney fees. *See, e.g., Palmer v. General Services Admin.*, 787 F.2d 300 (8th Cir.1986) ("Under [American Rule], absent express statutory authorization to the contrary, each party is ordinarily required to pay its own attorneys' fees"). There is no reason under the facts of this case to cause an exception to the general rule that each party must bear his own costs of litigation.

*In re Hicks*, 65 B.R. 980, 984-85 (Bankr. W.D. Ark. 1986); *see also In re Gjestvang*, 405 B.R. 316, 322 (Bankr. E.D. Ark. 2009) ("Section 105(a) standing alone does not give a bankruptcy court the authority to award attorney's fees.").

Dwelle was not able to direct the Court to a specific statute, rule, or other ground that would allow the Court to grant an award of attorney fees. Nor was the Court able to find any authority under which it could award attorney fees.

Even if the Court had the authority to award attorney fees in this case, the Court would first have to determine the hours reasonably expended and then a reasonable hourly rate. *See Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 576 (8th Cir. 2014). The amounts requested by counsel in this case–741.50 hours at $400.00 per hour–are appreciably excessive and not reasonable.

In this instance, counsel's request for an attorney fee in the amount of nearly $300,000.00

shocks the conscience of the Court. Counsel asserts that his fee of $400.00 per hour is "most common" and is the same amount he charges for fact gathering, analyzing, researching, writing, and filing "complicated modifications to bankruptcy plans . . . ." However, the time included on counsel's itemized fee billing statement, which was included with his motion for attorney fees, evidences the same lack of experience counsel exhibited at trial.[6] The trial lasted for three days when a day should have sufficed and,

---

[6] For instance, counsel's first nine time entries, which span from October 4, 2013, to October 13, 2013, all reference identical activity:

> **Researching, writing, analyzing & applying all facts, laws, definitions, restatements, policies, and relationships pertaining to the parties and the harmful events complained of.**
>
> **Including reviewing, analyzing, preparing, labeling, storing, and retrieving all exhibits used.**
>
> *For docket entry no. 1. 420 pages and 29 documents.*

Counsel recorded the following billing hours during that week:

| | | |
|---|---|---|
| October 4 to October 5 | 8 a.m to 4 a.m | 20 hours |
| October 5 to October 6 | 11 a.m. to 4 a.m. | 18 hours |
| October 6 | 12 p.m. to 9 p.m. | 9 hours |
| October 7 | 8 a.m. to 9 p.m. | 13 hours |
| October 8 to October 9 | 2 p.m. to 4 a.m. | 12 hours |
| October 9 | 11 a.m. to 8 p.m. | 9 hours |
| October 10 to October 11 | 8 a.m. to 4 a.m. | 20 hours |
| October 11 to October 12 | 4 p.m. to 4 a.m. | 12 hours |
| October 12 to October 13 | 11 a.m. to 4 a.m. | 17 hours |

Because the time record provided by counsel then skips from page 2–ending on October 13, 2013–to page 8–beginning on February 8, 2015–the Court cannot tell whether counsel's time records for drafting the initial complaint (docket entry no. 1) were complete. Regardless, considering only the first two pages of the time record, during that first week, counsel worked a total of 130 hours and billed $52,000.00 to draft the initial complaint. That complaint was 57 pages long and included 363 pages of exhibits. Apparently counsel disregarded Federal Rule of Bankruptcy Procedure 7008, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." As recognized by Mark Twain, "*[a]ny*body can have ideas–the difficulty is to express them without squandering a quire of paper on an idea that ought to be reduced to one glittering paragraph." Mark Twain, reprinted in *The Sun*, Apr. 2015, at 48. This, too, is a case where less would have been more.

Later in the time record–between February 20, 2015, and February 24, 2015–counsel

according to Arvest, the only discovery conducted by counsel were interrogatories and a request for production of documents that were served on Arvest on February 13, 2015, approximately one month prior to the trial but seventeen months after the initial complaint was filed. (Mot. of Defs. to Quash Trial Subpoena or in the Alternative Mot. in Limine, doc. 77 filed 3/12/2015, at ¶ 7.) Counsel's initial complaint was an unwarranted 57 pages and his amended complaint, which was filed on February 5,

---

references the following activity:

| | |
|---|---|
| 2/20/15 to 2/21/15<br>4 p.m. to 7 p.m. next<br>27 hrs | Get 4 more Official Form B255's from Court Website for Subpoena's of the actors.<br>Prepare Jim C. Walton, Trudy Newsom, Cindy McCullar and Marcus Summerville Subpoena (w/ typewriter).<br>Save, scan, record all work.  For Hand delivery to Davis Processing by close of office at 5 pm on 2/24/15.  Also need travel checks.<br>Attorney also prepared draft version of "proposed Order" Denying Motion to Reconsider or Strike as previously directed by the Court on 2/19/15.<br>*For docket entry no. 66.*<br>*For docket entries no.'s 73; 74; 75; and 76.* |
| 2/23/15<br>9 a.m. to 10 p.m.<br>13 hrs | Go to Bank of America.  Get 4 separate Travel checks.  Wife ticked.  Finish and re-proof Jim C. Walton, Trudy Newsom, Cindy McCullar and Marcus Summerville Subpoenas (w/ typewriter).<br>Re-Save, scan, record, all work.  To comply with John Calhoun's instructions after Court on 2/19/14.  Out with old.  In with new.  Update cover letters accordingly.<br>Attorney also prepared final versions of "proposed Order" Denying Motion to Reconsider or Strike as previously directed by the Court on 2/19/15.<br>*For docket entry no. 66.*<br>*For docket entries no.'s 73; 74; 75; and 76.* |
| 2/24/15<br>9 a.m. to 12 p.m.<br>3 hrs | Hand delivery of subpoenas for Jim C. Walton, Trudy Newsom, Cindy McCullar, and Marcus Summerville to Davis Processing w/ travel checks and cover letters. |

With the possible exception of drafting the two-page "proposed Order," which simply incorporated the Court's oral ruling on February 19, the activity recorded during these three days appears to be mostly ministerial relating to filling out and delivering four subpoenas to a process server.  For the 43 hours that counsel was engaged in these tasks, he billed $17,200.00.

Later, on March 11 and March 12, 2015, counsel again prepared a subpoena.  The subpoena was to be served on a state employee and also involved communication with the state, apparently to determine the protocol concerning service on a state employee.  This subpoena, too, was delivered to a process server for service.  According to counsel's time records, this task took 17 hours over two days and he billed $6800.00.

2015–approximately seven weeks prior to trial–was an incredible 100 pages. Both complaints should have been far shorter.

Counsel was unquestionably a zealous advocate for his client and the Court hopes that counsel can learn and become more efficient from this experience. There is a southern idiom that states: "pigs get fat; hogs get slaughtered." This seems to apply to counsel's request for fees and costs in this instance. Had counsel followed the proper procedure, a *reasonable* request for costs may have been granted. However, for the reasons stated in this order, the Court denies Dwelle's *Rule 7054 Motion For Attorney's Fees and Cost* in its entirety.

IT IS SO ORDERED.

                                                                                           /s/ Ben Barry
                                                                                           Ben Barry
                                                                                           United States Bankruptcy Judge
                                                                                           Dated: 05/27/2015

cc:    Travis L. Starr
         Marc Honey
         John C. Calhoun Jr.
         Randy Grice
         Jack W. Gooding